**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**NEWNAN DIVISION**

| | |
|---|---|
| SHAWN ISAACS, *on behalf of himself and others similarly situated,*<br><br>*Plaintiff,*<br>*v.*<br><br>USHEALTH ADVISORS, LLC,<br><br>*Defendants.* | Civil Case No.: 3:24-cv-00216-TCB |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION**
**TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Fed. R. Civ. P 12(b)(6), Defendant USHEALTH Advisors, LLC ("USHA") moves to dismiss Plaintiff Shawn Isaacs' First Amended Complaint, Dkt. No. 15 (the "FAC"), with prejudice for failure to state a claim upon which relief can be granted.[1]

## INTRODUCTION

[1]In USHA's initial motion to dismiss, (Dkt. No. 14), USHA moved in the alternative to dismissal to stay the case. As that aspect of the initial motion to dismiss appears to still be pending, while USHA continues to seek a stay of proceedings until the Supreme Court of the United States decides *McLaughlin Chiropractic Associates, Inc. v. McKesson Corp.*, No. 23-1226, to avoid duplicative filings, USHA relies on its pending alternative motion to stay.

Plaintiff brings this lawsuit against USHA under the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5) ("TCPA"). Plaintiff attempts to assert two claims: the first for violations of the TCPA's National Do-Not-Call ("NDNC") rules, and the second for violations of the TCPA's Internal (or company-specific) Do-Not-Call ("IDNC") rules. In the FAC, Plaintiff dropped Defendant UnitedHealth Group, Inc. from the lawsuit, but Plaintiff's allegations against USHA remain insufficient to state a plausible claim for relief against USHA. Plaintiff acknowledges receiving a letter from USHA regarding the text messages, but glosses over the fact that the letter advised the text messages came from "independently contracted insurance agents . . . ." FAC at ¶ 15. Plaintiff continues to make conclusory allegations, without any factual amplification, that USHA directly or through a principal-agent relationship sent the text messages to him. More is required of a TCPA plaintiff.

First, Plaintiff fails to plausibly allege either direct liability or vicarious liability. The letter that Plaintiff quotes from, but does not attach to the FAC, states USHA "is an insurance agency that contracts with independently contracted insurance agents to market and sell its products," and USHA "itself does not place any outbound marketing calls and did not place any calls to your number." **Ex. A**.[2] Plaintiff, though, still alleges that USHA sent him the text messages on a bald and

---

[2] The Court can consider Exhibit A on this Rule 12(b)(6) motion because the document is referred to by Plaintiff in the FAC and integral to his claims. *See SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

conclusory assertion that its “systems initiated and made the text messages,” (FAC at ¶ 96), while alternatively alleging in equally implausible and conclusory terms that the independently contracted insurance advisors who allegedly sent the text messages to him are in a common law principal-agent relationship with USHA.

Plaintiff also fails to state plausible NDNC and IDNC claims. Plaintiff admits that the alleged text messages were made to his “cellular telephone number ending in 5842.” Compl. at ¶ 41. The Do Not Call section of the TCPA upon which Plaintiff seeks relief is extremely limited and narrow and is only applicable to “telephone solicitations” made to “residential telephone subscribers” who place their telephone numbers on the National Do-Not-Call Registry. 47 U.S.C. § 227(c)(1). By definition and Plaintiff’s own Complaint, Plaintiff’s cellular telephone number is not a “residential telephone,” nor is Plaintiff a “residential telephone subscriber,” therefore Plaintiff’s Complaint should be dismissed.

Plaintiff further fails to state a plausible IDNC claim because once again, Plaintiff simply asks the Court to assume, without any well-pleaded, non-conclusory, non-speculative bases, that USHA placed telephone solicitations via text message to Plaintiff without the do-not-call procedures required by TCPA regulations, such as having a DNC policy, training personnel, and registering and honoring IDNC requests. The courts have made clear that more than a conclusory assertion to that effect is required to state a plausible claim for relief, particularly

when there is a dearth of any supporting allegations.

## ARGUMENT

## I. LEGAL STANDARD

A pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citation omitted).

## II. PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF

### A. All Claims Should Be Dismissed Because Plaintiff Does Not Plausibly Allege USHA's Alleged Role or Basis for Liability (Direct or Vicarious)

The first deficiency with the FAC, and one that precludes Plaintiff from stating even a single plausible claim for relief against USHA, is his failure to plausibly state who texted him in alleged violation of the TCPA or a plausible theory of liability against USHA (direct or vicarious). "For a person to 'make' a call under the TCPA, the person must either (1) directly make the call, or (2) have an agency relationship with the person who made the call." *Cacho v. USHealth Advisors, LLC*, No. 6:23-CV-737-CEM-EJK, 2024 WL 473774, at *2 (M.D. Fla. Jan. 5, 2024) (quoting *Abante Rooter & Plumbing v. Farmers Group, Inc.*, No. 17-CV-03315-PJH, 2018 WL 288055, *4 (N.D. Cal. Jan. 4, 2018)). Plaintiff does not plausibly allege either form of liability.

**1. Plaintiff Fails to Plausibly Allege USHA Is Directly Liable**

Direct liability under the TCPA can exist only against the actual "maker" of the calls at issue, *i.e.*, the party that physically placed or initiated the call or text. *See, e.g., Thomas v. Taco Bell Corp.*, 897 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012), aff'd 582 Fed. Appx. 678 (9th Cir. 2014); *Ashland Hosp. Corp. v. Serv. Employees Int'l Union*, Dist. 1199 WV/KY/OH, 708 F.3d 737, 742-43 (6th Cir. 2013); *Mey v. Pinnacle Security, LLC*, Civil Action No. 5:11CV47, 2012 WL 4009718, *4 (N.D. W. Va. Sept. 12, 2012); *Zerson v. PT Ins. Group*, No. 11 C 7919, 2012 WL 5936286 (N.D. Ill. Nov. 27, 2012).

Here, Plaintiff has not pleaded a single factual allegation to suggest that USHA itself, rather than an independently contracted insurance advisor, placed or initiated the alleged texts messages. For every alleged text message that Plaintiff replicates in his Complaint, he states, in uniform fashion, that "Defendant texted [Plaintiff] the following text message." FAC. at ¶¶ 46, 47, 66, 69. Even on a motion to dismiss, a court cannot accept that "the inquiry of who placed these . . . calls 'should end' with the bare allegation that [the defendant] made the calls," because "[s]uch an assertion merely parrots the language of the TCPA." *Escano v. Concord Auto Protect, Inc.*, No. CV 21-223 MV/CG, 2022 WL 1239968, *4 (D.N.M. Apr. 27, 2022), report and recommendation adopted, 2022 WL 2751719 (D.N.M. July 14, 2022). Such conclusory allegations clearly fail to raise the conclusory assertion of USHA's direct involvement "above the speculative level." *Twombly*, 550 U.S. at 556. Such unadorned allegations of direct liability are especially incapable of giving rise to a plausible inference of direct liability when Plaintiff relies on a document that expressly states "[USHA] itself does not place any outbound marketing calls and did not place any calls to your number." Ex. A at 1.

**2. Plaintiff Fails to Plausibly Allege Vicarious Liability**

In the FAC, Plaintiff now makes allegations that USHA is liable for the text messages at issue "under either direct liability" or "vicarious liability." FAC at ¶ 92. The FAC, though, falls far short of stating facts sufficient to state a plausible, as

opposed to conceivable, claim for liability against USHA based on the text messages being made by someone else at USHA's direction.

"[U]nder federal common-law principles of agency, there is vicarious liability for TCPA violations." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019) (quoting *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016)). Those federal common-law principles of agency are formal agency, apparent authority, and ratification. *See*, *e.g.*, *Cabrera v. Gov't Emps. Ins. Co*., 452 F. Supp. 3d 1305, 1316 (S.D. Fla. 2014). The FAC does not contain any well-pleaded facts that could permit a plausible inference of an agency relationship under any of these three principles. On a motion to dismiss, the Court must determine whether there is "a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Snyder v. iCard Gift Card, LLC*, No. 0:15-CV-61718-WPD, 2017 WL 10379592, at *3 (S.D. Fla. May 11, 2017).

Therefore, Plaintiff must allege enough facts to show that USHA exercised substantial control over third-party telemarketer agents' actions, ratified the agents' conduct, or represented that the agents acted with authority from USHA. *See Legg v. Voice Media Grp., Inc*., 20 F. Supp. 3d 1370, 1377 (S.D. Fla. 2014). The law requires far more than throwing around the term "agent" to state a plausible agency relationship purportedly giving rise to vicarious liability. *See*, *e.g.*, *Jessop v. Penn Nat'l Gaming, Inc*., No. 6:18-CV-1741-ORL-37DCI, 2019 WL 5549143, *4-5

(M.D. Fla. Oct. 28, 2019) (granting motion to dismiss because "Plaintiff needs more than conclusory statements that a party is an 'agent,'" and "[n]othing in the Complaint . . . indicates that Penn National controls the internal affairs of Everi, controls how Everi operates on a daily basis, or offers more than vague, conclusory allegations of control and agency").

For a formal agency relationship to exist, "the principal must have the right to control the manner and method of work carried out by the agent, and the agent must be able to affect the legal relationships of the principal." *Cabrera*, 452 F. Supp. 3d at 1317 (internal quotation omitted). Moreover, to state a basis for liability, a plaintiff "must do more than establish an agency relationship. They must also establish that the purported agent had actual authority" from the principal "to place the unlawful calls," *i.e.*, to place a telephone call in violation of the TCPA's "do-not-call" rules. *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018). Nothing of the sort is alleged here. The only well-pleaded allegation of fact, provided by the letter from USHA that he relies upon but did not attach, is that USHA and the independently contracted insurance advisors who he claims texted him have a contractual relationship. But far more than that is required to plausibly state an agency relationship:

> The existence of a contractual relationship . . . does not, in and of itself, mean that there is an agency relationship between the two parties. A "court can infer that there is some relationship between" two parties, but "that inference is not enough [to establish agency] because it still

> does not allow the court to infer that defendant exercises control over the representatives."

*Winters v. Quicken Loans Inc.*, No. CV-20-00112-PHX-MTL, 2021 WL 5040323, *4 (D. Ariz. Oct. 29, 2021) (quoting *Abante*, 2018 WL 288055 at *5).

The FAC does not allege any facts showing that USHA controlled the manner and method of the work carried out by these purported agents. Plaintiff's conclusory and unadorned allegations and assertions that USHA "authorized" so-called "agents," which can fit just as easily into any template of a TCPA complaint, fails to plausibly allege USHA controlled the means and methods of any text messaging or authorized anyone to violate the TCPA. Absent such control, there can be no formal agency. The are numerous decisions to this effect.[3] Plaintiff makes allegations of

---

[3] *See Cunningham v. Matrix Fin. Servs., LLC*, No. 4:19-CV-00896-ALM-CAN, 2021 WL 1233466, *12 (E.D. Tex. Feb. 12, 2021) (recommending dismissal of claims where plaintiff "failed to plead any facts showing any degree of control" and, aside from conclusory assertions, "provides no further indication of how [defendants] asserted control over [the defendant who placed the alleged calls], its agents, or callers"); *Naiman v. TranzVia LLC*, No. 17-CV-4813-PJH, 2017 WL 5992123, *11 (N.D. Cal. Dec. 4, 2017) ("The complaint does not allege any facts showing that TranzVia had any control, or any express or actual authority, over Rose or any associated entity that made the phone calls. . . . [Conclusory allegations of control] without any facts showing how TranzVia did those things or how it knew those things, or what facts the allegations are based on—are not facts that allow the court to draw the reasonable inference that TranzVia is vicariously liable for Rose's alleged misconduct."); *Shank v. Health Care Serv. Corp.*, No. 16 C 3993, 2016 WL 6524952, *1 (N.D. Ill. Nov. 3, 2016) (finding allegations such as that defendant "has the ability to control and exercises control over Prime, and Prime assents to HCSC's control . . . . mere conclusory statements [that] are insufficient to survive a motion to dismiss") (internal quotation omitted); *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440 (VEC), 2015 WL 7736547, *7 (S.D.N.Y. Nov. 30, 2015)

control on information and belief, but provides no basis for these conclusory assertions sufficient to render them plausible. In the absence of "any allegation demonstrating Defendant's control over the alleged [insurance advisor] telemarketers as to the calls at issue," formal agency is not plausibly alleged. *Clemons v. State Farm Mut. Automobile Ins. Co.*, No. 1:20-CV-1050, 2020 WL 4193997, *4 (C.D. Ill. July 21, 2020).

Plaintiff's invocation of apparent authority fares no better. Apparent authority requires "(1) a representation by the purported principal [here, USHA ]; (2) reliance on that representation by a third party [Plaintiff]; and (3) a change in position by a third party [Plaintiff] in reliance upon such a relationship." *Cabrera*, 452 F. Supp. 3d at 1319-20. The FAC fails to allege a single fact that would plausibly support ***any*** of these theories. For example, Plaintiff does not identify a single representation by the purported principal – USHA – to him or how relied on any such representation and changed his position as a result, which is essential for a finding of apparent authority.[4] Nor does he even allege that the purported agents mentioned USHA, the

("Mere conclusory allegations that Archer was Experian's agent or that Experian had the right to control the sending of the texts, without more, fails to plead an agency relationship (between Experian and Archer or any other entity) sufficient to allege vicarious liability under . . . the TCPA").

[4] *See, e.g.*, *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020) (affirming dismissal of TCPA complaint for failure to plausibly state apparent authority because "statements by an agent are insufficient to create apparent authority without also tracing the statements to a principal's manifestations or control. . . . Warciak's complaint further fails to allege sufficient facts to show how

purported principal. Courts have required far more than what is stated in the FAC for a plaintiff to allege apparent authority sufficiently.[5]

In alleging apparent authority, Plaintiff expressly relies upon the FCC's language in *In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013), quoting the FCC's language and then asserting many of those items apply here, but again in wholly conclusory terms and virtually all "[u]pon information and belief." *See* FAC at ¶¶ 103-109. Even if they had been well-pleaded, such allegations do not support a claim of apparent authority as a matter of law, regardless. The FCC itself "agrees that the 'guidance' in question" that it provided – "how the

---

he reasonably relied, to his detriment, on any apparent authority with which he alleges Subway cloaked T-Mobile.") (internal citations omitted); *Shanahan v. Nat'l Auto Prot. Corp.*, No. 1:19-CV-03788, 2020 WL 3058088, *6 (N.D. Ill. June 9, 2020) ("Plaintiff does not identify any statements made by the Matrix Defendants or Nation Motor in her Service Plan materials—or at any other time—representing that they made National Auto their agent. This failure defeats her theory based upon apparent authority.").

[5] *See, e.g.*, *McDermet v. DirecTV, LLC*, No. CV 19-11322-FDS, 2021 WL 217336, *9 (D. Mass. Jan. 21, 2021) (holding "the fact that defendants contracted with the retailers for various [marketing] services does not, without more, establish" "that the authorized retailers had apparent authority to telemarket to him as defendants' agents"); *Abante*, 2018 WL 288055 at *5-6 (rejecting as insufficient allegations that defendant's agents called on defendant's behalf and promoted defendant's brand and products because "they assume an agency relationship exists in order to show defendant made a manifestation to a third party"); *Panacci v. A1 Solar Power, Inc.*, No. 15-CV-00532-JCS, 2015 WL 3750112, *7 (N.D. Cal. June 15, 2015) (finding allegation that purported agent "stated that the intention was to refer Plaintiff to Defendant" was insufficient because it did "not show that [defendant] controlled, authorized, or even knew about [purported agent's] phone calls or that [defendant] had any control over [purported agent]").

common law of agency might apply in the telemarketing context" – "has no binding effect on courts, . . . is not entitled to deference . . ., and that 'its force is dependent entirely on its power to persuade.'" *Dish Network, L.L.C. v. Fed. Commc'ns Comm'n*, 552 F. App'x 1, 2 (D.C. Cir. 2014). Courts have routinely found that the FCC's deviation from common law principles of agency, in particular apparent authority, for which Plaintiff relies upon it, is unjustified and unpersuasive.[6] Rather, the three-factor test set forth above, for which there are ***no*** well-pleaded supporting factual allegations in the FAC, remains the law. *See Cabrera*, 452 F. Supp. 3d at 1319-20.

The third and final basis for vicarious liability, ratification, is "'the affirmance of a prior act done by another, whereby the act is given effect as if done for an agent acting with actual authority."' *Cordoba v. DIRECTV, LLC*, No. 1:15-CV-3755-MHC, 2021 WL 6841777, at *8 (N.D. Ga. Feb. 12, 2021) (quoting Restatement (Third) of Agency § 4.01(1) (2006)). To prove ratification as a basis for vicarious liability, a plaintiff must show: "'(1) the existence of a principal-agent relationship; (2) that the principal accepted the benefits of the unauthorized act; (3) with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized agreement."' *Id.* (quoting *Cabrera*, 452 F. Supp. 3d at 1320)). Again,

[6] *See, e.g.*, *Clemons*, 2020 WL 4193997 at *3; *Krakauer v. Dish Network L.L.C.*, 311 F.R.D. 384, 395 (M.D.N.C. 2015); *Cabrera*, 452 F. Supp. 3d at 1320 n.14; *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 745 (N.D. Ill. 2014).

Plaintiff pleads no factual allegations sufficient to state a facially plausible claim that USHA accepted the benefits of any unauthorized act of a third party, nor that USHA had full knowledge of the facts under the circumstances demonstrating an intent to adopt any unauthorized agreement. Nor can Plaintiff allege any benefits were accepted as to any alleged text messages to him because he never made a purchase. That is fatal to any ratification theory because "direct proceeds" from the ratifiable act – made sales or other revenue, not just potential sales or revenues – are necessary for ratification to apply. *Hodgin v. UTC Fire & Sec. Americas Corp*., 885 F.3d 243, 253-54 (4th Cir. 2018)*; see also Kristensen v. Credit Payment Servs. Inc.*, 879 F.3d 1010, 1014 (9th Cir. 2018).

### B. Plaintiff Fails to Plausibly Alleged He Is a Residential Telephone Subscriber, as Required for His TCPA Claims

Even if Plaintiff had plausibly alleged direct or vicarious liability against USHA, he still fails to state a plausible claim for relief because neither of the provisions of the TCPA under which he is suing apply to calls or text messages to cellular telephone numbers, which is the basis of his claims.

Both the plain text and structure of Section 227(c) are limited to "residential telephone subscribers," clearly distinguishing cellular telephone subscribers from residential telephone subscribers – and thus a residential telephone from a cellular telephone. Therefore, Plaintiff's NDNC and IDNC claims related to texts allegedly made to his cellular telephone should be dismissed as he is not a residential telephone

subscriber, nor were the alleged texts made to a residential telephone. Though Plaintiff erroneously states that the requirements of section 227(c) that mention residential telephones were extended to cover calls to cellular telephones (FAC at ¶ 33), the Eleventh Circuit made clear in *Osorio v. State Farm Bank, F.S.B*., 746 F.3d 1242 (11th Cir. 2014), that "cell" and "residential" phones are not synonymous. *Id.* at 1250 (Noting that prior decisions interpreting the scope of the 47 U.S.C. § 227(b)(1)(B) prohibition on "initiating any telephone call to any residential telephone line" were of "limited value" where the case before the court concerned calls to a cell phone.)*; see also Cunningham v. Caribbean Cruise Lines*, No. 15-62580-CIV-MORENO, 2016 WL 7494871, at *2 (S.D. Fla. Dec. 28, 2018) ("Plaintiff concedes that all telephone calls at issue were made to his cellular telephone, and the Court finds Plaintiff's assertion that a cellular phone can be converted into a residential phone unavailing."); *Schweitzer v. Northland Group, Inc.*, 14- 80494-CIV, 2014 WL 5782991, at *3 (S.D. Fla. Nov. 6, 2014).

47 U.S.C. § 227(c)(1)(5) authorizes the creation of the National Do-Not-Call Registry "to protect *residential telephone subscribers'* privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1) (emphasis added). The corresponding federal regulation cited by Plaintiff in his Complaint, 47 C.F.R. § 64.1200(c), provides "[n]o person or entity shall initiate any telephone solicitation to ... (2) [a] residential telephone subscriber who has registered

his or her telephone number on the national do-not-call registry of persons . . . ." Therefore, in order for Plaintiff to be able to state a claim for relief under 47 U.S.C. § 227(c)(5), he must plausibly allege that he (i) is a "residential telephone subscriber"; (ii) received a telephone solicitation; (iii) registered the residential telephone number on the nation DNC Registry, prior to receiving said solicitation; and (iv) received more than one violative telephone call within a 12-month month period by or on behalf of the same entity. *See Radvansky v. Kendo Holdings, Inc.*, No. 3:23-CV-214-TCB, 2024 WL 3811996, *5 (N.D. Ga. Aug. 13, 2024) (Batten, J.).

Plaintiff's other claim, for violation of the internal do-not-call rules set forth in 47 C.F.R § 64.1200(d), (*see* FAC at ¶¶ 131-137), also applies only to residential telephone subscribers. More specifically, 47 C.F.R § 64.1200(d) states, "[n]o person or entity shall initiate any call for telemarketing purposes to a *residential* telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." (emphasis added).

In 2003, the Federal Communications Commission ("FCC") issued its Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 and decided that "[t]he rules set forth in sections 64.1200(c) and 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing

calls to wireless telephone numbers . . . ." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003) ("2003 FCC Order"). But neither the TCPA nor the 2003 FCC Order contains any indication that Congress authorized the FCC to implement regulations relating to 47 U.S.C. § 227(c) to cellular or wireless telephone numbers.

In fact, Congress specifically prohibited the FCC from expanding Section 227(c) by the very language contained within 47 U.S.C. § 227(c)(1), where Congress directed the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights . . . ." 47 U.S.C. § 227(c)(1). Had Congress intended for 47 U.S.C. § 227(c) to include cellular or wireless numbers, Congress would have included a direction to the FCC to include cellular or wireless numbers in the FCC's rulemaking process. Congress, however, specifically chose to exclude cellular and wireless numbers from 47 U.S.C. § 227(c)(1) by limiting the language within 47 U.S.C. § 227(c)(1) to "residential telephone subscribers." Therefore, the FCC was never authorized to issue regulations under 47 U.S.C. § 227(c) that relate to or cover cellular or wireless telephone subscribers.

And, within 47 U.S.C. § 227(c)(3), Congress once again had the ability to include cellular and wireless numbers, however it intentionally excluded cellular and wireless numbers when it instructed and authorized the FCC to establish and operate a "single national database to compile a list of telephone numbers *of residential*

*subscribers* who object to receiving telephone solicitations, and to make that compiled list and parts thereof available for purchase." 47 U.S.C. § 227(c)(3) (emphasis added). Because Section 227(c) by its plain text is limited to only residential telephone subscribers, residential telephones, and residential subscribers, the FCC had no authority or right to expand and re-write 47 U.S.C. § 227(c) as it did when it issued the 2003 FCC Order and interpreting "[t]he rules set forth in sections 64.1200(c) and 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers . . . ." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

Under the Hobbs Act, courts of appeal have exclusive jurisdiction to determine the validity of final FCC orders such as the above-cited 2003 Order, (28 U.S.C. § 2342(1)), leading courts to have ruled that district courts are barred from considering any argument that an FCC order misinterpreted the law. In the event that that the Supreme Court overturns that aspect of the Hobbs Act in *McLaughlin*, this Court will be free to join the courts that have already expressed "sympath[y] to the sentiment that the 2003 FCC order may violate separation of powers by going further than the authority Congress vested the FCC with" regarding the meaning of "residential subscriber" and the scope of the private right of action under 47 U.S.C. § 227(c)(5), under which Plaintiff is suing. *Radvansky,* 2024 WL 3811996, at *5.

Courts holding that the DNC provision does not apply to cell phones include *Gaker*, 2023 WL 2472649; *Johnson v. Palmer Admin. Servs.*, 2022 WL 17546957, at *8 (E.D. Tex. Oct. 20, 2022), *R&R adopted*, 2022 WL 16919786 (E.D. Tex. Nov. 14,2022); *Cunningham v. Creative Edge Mktg.*, 2021 WL 3085415, at *5 (E.D. Tex. June 16, 2021), R&R *adopted*, 2021 WL 3085399 (E.D. Tex Nov. 14, 2022); *Callier v. Greensky, Inc.*, 2021 WL 2688622, at *6 (W.D. Tex. May 10, 2021); *Strange v. Doe #1*, 2020 WL 2476545, at *3 (W.D. La. May 12, 2020); *Cunningham v. Sunshine Consulting Grp.* 2018 WL 3496538, at *6 (M.D. Tenn. July 20, 2018), *R&R adopted*, 2018 WL 5728534 (M.D. Tenn. Aug. 7, 2018); *Shelton v. Fast Advance Funding, LLC*, 378 F. Supp. 3d 356, 363 n.7 (E.D. Pa. May 8, 2019); *Cunningham v. Spectrum Tax Relief, LLC*, 2017 WL 3222559, at*3 (M.D. Tenn. July 7, 2017); *Cunningham v. Enagic USA Inc.*, 2017 WL 2719992, at *5, 6 (M.D. Tenn. June 23, 2017).

While there does not appear to be any controlling Eleventh Circuit cases on the issue of whether Section 227(c) applies to cellular telephones, several courts have found that it does not based on the clear language of the statute. *Accord Cunningham v. Politi*, No. 4:18-CV-00362, 2019 WL 2519702, *4 (E.D. Tex. Apr. 26, 2019) ("Recent courts considering [similar] claims . . . have found [the TCPA] does not encompass . . . cellular phones."), report and recommendation adopted, 2019 WL 2526536 (E.D. Tex. June 19, 2019). However, there is likely an Eleventh Circuit decision on the way given *Radvansky*. Moreover, this argument is further supported

by the Eleventh Circuit's recent holding that "the FCC exceeded its statutory authority under the TCPA because the 2023 Order's new consent restrictions" – the "one-to-one" and "logically-and-topically-related" restrictions – "impermissibly conflict with the ordinary statutory meaning of 'prior express consent.'" *Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n*, No. 24-10277, 2025 WL 289152, *2 (11th Cir. Jan. 24, 2025) ("IMC"). The FCC's alteration of the ordinary meaning of "residential telephone subscriber" or "residential subscriber," (47 U.S.C. § 227(c)), particularly when the statutory text already distinguishes between "residential telephone line" and a "telephone number assigned to a . . . cellular telephone service," (47 U.S.C. §§ 227(b)(1)(A) & 227(b)(1)(B)), is equally impermissible under the Eleventh Circuit's reasoning in IMC. While the FCC here, too, may have thought it was a good idea to extend protections for residential telephone subscribers to cellular telephone subscribers, "[a]textual good policy cannot overcome clear text." *IMC*, 2025 WL 289152 at *8 & 9.

In *Gaker*, the court ruled that "[t]he FCC's rulemaking authority under section 227(c) extends only to unwanted telephone solicitations directed at "residential telephone subscribers." 47 U.S.C. § 227(c)(1). The Court in *Gaker* went on to state "[n]otably, Congress referenced "cellular telephone" in other provisions of the statute. *See* 47 U.S.C. § 227(b)(1)(A)(3); 47 U.S.C. § 227(b)(2)(C); 47 U.S.C. § 227(b)(2)(H). "[T]he TCPA specifically mentions 'cellular telephone service' in §

227(b) and § 64.1200(a)(1)(iii), evidencing that both Congress and the FCC were aware of the distinction between a cellular telephone and a residential telephone and purposely protected only 'residential telephone subscribers' under § 227(c), § 64.1200(c) and (d)." *Id.* (citing *Shelton* 378 F. Supp. 3d at 363 n.7 (E.D. Pa. 2019)). The court in *Gaker* found that "[t]he FCC's interpretation at issue does not preclude this Court from applying the clear text of the TCPA."

Therefore, Plaintiff's claims should be dismissed as the texts were not made to a residential telephone and Plaintiff cannot be considered a residential telephone subscriber when using his cellular telephone subscription.

**C. Plaintiff Fails to Plausibly Allege Lack of IDNC Procedures**

There is an additional ground for dismissal of Count II, Plaintiff's IDNC claim. In Count II of the FAC, Plaintiff alleges that USHA violated 47 U.S.C. § 227(c)(5) and its implementing regulation, 47 C.F.R. § 64.1200(d). *See* FAC at ¶¶ 131- 137. "For a TCPA claim under 47 C.F.R. § 64.1200(d) to survive a motion to dismiss, 'a plaintiff must show that the entity placing the calls failed to institute the proper procedures prior to the initiation of the call.'" *Barr v. Macys.com, LLC*, No. 1:22-CV-07867 (ALC), 2023 WL 6393480, *4 (S.D.N.Y. Sept. 29, 2023) (quoting *Simmons v. Charter Commc'ns, Inc.*, 222 F. Supp. 3d 121, 131 (D. Conn. 2016), aff'd, 686 F. App'x 48 (2d Cir. 2017). *See also Benzion v. Vivint, Inc.*, No. 12-61826-CIV, 2014 WL 11531368, *5 (S.D. Fla. Jan. 17, 2014) (same). Those

procedures include having a written DNC policy, training personnel, and recording and honoring DNC requests within thirty days. *See* 47 C.F.R. 64.1200(d).

Plaintiff's IDNC claim fails because he never states facts sufficient to plausibly allege that USHA lacks proper IDNC procedures. First, Plaintiff does not allege that he ever asked about or requested a copy of USHA's DNC policy. This is fatal, because a plaintiff does "not plausibly allege an internal do not call list violation" when he "did not request a copy of the Do Not Call Registry [or policy] from Defendants." *Rahimian v. Adriano*, No. 2:20-cv-02189-GMN-VCF, 2022 WL 798371, *3 (D. Nev. Mar. 16, 2022) (dismissing plaintiff's § 64.1200(c) claim for failure to state a claim). The court in *Barr* similarly stressed that deficiency and concluded that "[o]ther than his conclusory allegation that Defendant lacked an Internal DNC, Plaintiff has failed to adequately dispute the existence of Defendant's Internal DNC list and policies, or that Defendant's procedures were lacking in any way." 2023 WL6393480 at *4. The allegations are further deficient because they are all made about another entity's purported lack of procedures and practices. *See* Dkt. No. 1; FAC at ¶ 48. The FAC contains no allegations, well-pleaded or otherwise, that USHA lacks the IDNC practices and procedures required by the TCPA and its regulations.

For all these reasons, Plaintiff's IDNC claim falls well short of stating a plausible claim for relief against USHA.

## **CONCLUSION**

For the foregoing reasons, USHA respectfully requests that the Court dismiss Plaintiff's First Amended Complaint with prejudice.

Dated: February 4, 2025

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman
(*pro hac vice forthcoming*)
Roy Taub (*pro hac vice*)
200 E. Broward Blvd., Suite 1800
Ft. Lauderdale, FL 33301
(954) 491-1120
jeffrey.backman@gmlaw.com
mary.torres@gmlaw.com
roy.taub@gmlaw.com
cheryl.cochran@gmlaw.com

Alan S. Clarke
Georgia Bar No. 128225
1100 Peachtree Street, NE, Suite 924
Atlanta, GA 30309
(470) 466-1714
alan.clarke@gmlaw.com

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned hereby certifies that the foregoing Motion has been prepared in Times New Roman 14, a font and type selection approved by the Court in L.R. 5.1(B).

/s/ *Roy Taub*
Roy Taub

**CERTIFICATE OF SERVICE**

I hereby certify that, on February 4, 2025, a true and correct copy of the foregoing was electronically filed on the Court's CM/ECF document filing system, which will send notice of filing and a service copy to all counsel of record.

/s/ *Roy Taub*
Roy Taub