IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| SHAWN ISAACS,<br><br>Plaintiff,<br><br>v.<br><br>USHEALTH ADVISORS, LLC,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:24-cv-00216-LMM |

**ORDER**

This case comes before the Court on Defendant's Motion to Dismiss [17]. After due consideration, this Court enters the following Order.

## I. BACKGROUND

This action arises from telemarketing text messages Defendant sent to Plaintiff. Dkt. No. [15]. Plaintiff owns a cell phone, which he uses for personal purposes and not for a business. Id. ¶¶ 37–41. Plaintiff registered his cell phone number on the national do-not-call registry on March 2, 2018. Id. ¶ 42. Since that date, Plaintiff has received repeated text messages advertising health insurance plans for non-party United Health Care ("UHC"). Id. ¶¶ 43–47. For example, Plaintiff received the following text message in August of 2024:

> Hi Shawn! This is Hannah with UHC! There are new private medical insurance options based on health rather than income. May I send a quick quote? Reply "Yes" for quote or "Cease" to be removed.

Id. ¶ 47.

In September of the same year, Plaintiff wrote a letter to UHC, informing it that he is on the national do-not-call registry and asking UHC to stop sending him text messages. Id. ¶ 48. UHC initially informed Plaintiff that it added him to its internal do-not-call list, but UHC failed to actually do so. Id. ¶¶ 49–57. An attorney for Defendant later responded to Plaintiff's letter, indicating that she had investigated his complaint and determined that his phone number was "improperly" listed on the national do-not-call registry. Id. ¶¶ 58–65. Plaintiff continued to receive text messages advertising UHC's health insurance plans. Id. ¶¶ 66, 69.

Plaintiff sued Defendant,[1] alleging that Defendant violated the Telephone Consumer Protection Act ("TCPA") by sending him text messages: (a) after he registered with the national do-not-call registry (Count One); and (b) after he asked to be placed on Defendant's internal do-not-call list (Count Two). Dkt. No. [15] ¶¶ 125–37. Defendant now moves to dismiss this case. Dkt. No. [17].

[1] Plaintiff seeks to prosecute this case as a class action. Id. ¶¶ 110–124.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678.

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's Complaint, arguing that: (A) Plaintiff is not a "residential subscriber" and therefore does not qualify for the TCPA's protections; (B) Plaintiff has failed to allege sufficient facts showing that Defendant is responsible for the text messages Plaintiff received; and (C) Plaintiff has failed to allege that Defendant's internal do-not-call list procedures were deficient.[2] Dkt. No. [17-1]. Plaintiff opposes each of these arguments. Dkt. No. [23]. The Court addresses each argument separately below.

### A. "Residential Subscriber"

First, Defendant argues that the TCPA does not apply to Plaintiff, because the term "residential subscriber" categorically excludes cell phone users from the TCPA's protections. Dkt. No. [17-1] at 13–20; Dkt. No. [27]. As an initial matter, the Court notes that, before the Supreme Court's decision in McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. ___, 145 S. Ct. 2006 (2025), this question was well-settled. The Federal Communications Commission

[2] Defendant also moves for leave to supplement its brief once again and argue that the TCPA does not apply to text messages. Dkt. No. [29]. But Defendant's only explanation for its failure to raise this argument in any of its past briefings—including the supplemental reply brief the Court allowed Defendant to file—is that a district court in Illinois recently decided this issue. Id. ¶ 4. Because this district court decision is not binding on the Court and does not justify Defendant's delay in raising the issue, the Court **DENIES** Defendant's Motion for Leave to File Supplemental Brief and declines to address the issue. If necessary, Defendant may brief this issue at summary judgment.

("FCC") issued a report and order holding that cell phone users are "residential subscribers" under the meaning of the TCPA. In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991, 18 F.C.C. Rcd. 14014, 14038–39 (2003). For decades, courts accepted the FCC's order as binding, regularly rejecting arguments that cell phones fell outside the scope of the TCPA's protections. See, e.g., Radvansky v. Kendo Holdings, Inc., 744 F. Supp. 3d 1314, 1319 (N.D. Ga. 2024) (holding that the FCC's final order was not reviewable, given the Eleventh Circuit's interpretation of the Hobbs Act). However, in McLaughlin, the Supreme Court held that the Hobbs Act does not preclude district courts from disagreeing with the FCC's interpretations of the TCPA. McLaughlin, 145 S. Ct. at 2018–19. Thus, in light of McLaughlin, this Court must independently—and without deference to the FCC's decision—evaluate Defendant's argument that the term "residential subscriber" excludes cell phone users.

In doing so, the Court begins with the plain text of the applicable statutes and regulations.[3] Jimenez v. Dep't of Homeland Security, 119 F.4th 892, 906–07 (11th Cir. 2024). The TCPA authorized the FCC to establish a single, national database of telephone numbers for "residential subscribers who object to receiving telephone solicitations" and to promulgate regulations to protect the

[3] Defendant acknowledges that, since McLaughlin was decided, the Eleventh Circuit has not yet addressed the issue of whether a "residential subscriber" includes cell phone users. See Dkt. No. [27] at 10.

privacy rights of these residential subscribers. 47 U.S.C. § 227(c). Pursuant to this authority, the FCC prohibits telephone solicitations to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry." 47 C.F.R. § 64.1200(c)(2). Thus, Plaintiff's claims depend on whether he is a "residential subscriber."

Defendant argues that the term "residential subscriber" encompasses only users of landline, home phones. Dkt. No. [17-1] at 13–20. Specifically, Defendant contends that, because the term "residence" refers to a person's home or abode, "residential subscriber" excludes cell phones, which can be used outside of the home. Dkt. No. [27]. Plaintiff responds that the TCPA does not categorically exclude cell phone users and, because Plaintiff uses his cell phone only for personal purposes rather than business purposes, the TCPA applies to the text messages he received. Dkt. No. [23] at 14–23.

The Court agrees with Plaintiff. A "subscriber" is a "person who makes a regular payment in return for . . . access to a commercially provided service." Subscriber, Oxford English Dictionary, https://www.oed.com (2025). The term "residential" modifies "subscribers," meaning that the TCPA applies to a certain type of phone *subscriber* rather than to a particular type of phone *technology*. The ordinary definition of "residence" is the "act or fact of living in a given place for some time." Residence, Black's Law Dictionary (12th ed. 2024). Thus, applying the ordinary definition of "residential" to the term "subscriber," a

"residential subscriber" is a person who maintains a phone for the purposes of their private residence rather than for commercial or business purposes. In other words, a residential subscriber is a person who uses their phone for activities associated with their private, domestic life.

Defendant argues otherwise, contending that the term "residential subscriber" encompasses only landline phones—not cell phones. Dkt. No. [27]. But Defendant's interpretation of a residential subscriber ignores the fact that "residential" modifies "subscriber," meaning that the definition is tethered to a type of *person* rather than a type of *technology*. See Nielsen v. Preap, 586 U.S. 392, 407–08 (2019) ("Because words are to be given the meaning that proper grammar and usage would assign them, the rules of grammar govern statutory interpretation unless they contradict legislative intent or purpose." (cleaned up)). And although Defendant points out that Congress has occasionally used the term "cellular telephone service" and could have done so here if it intended for the TCPA to cover cell phones, Defendant overlooks the fact that Congress has also used the term "residential telephone *line*" elsewhere in the TCPA.[4] Put differently, Congress has sometimes limited the scope of the TCPA to specific types of phone lines, but, in this case, has limited the TCPA only to a particular

[4] At least one of the cases cited by Defendant relies on this differing language. See Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1250 (11th Cir. 2014) (referencing 47 U.S.C. § 227(b)(1)(B), which prohibits telephone calls to a "*residential telephone line*" under certain circumstances).

type of *subscriber*. See Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs., No. 24-10007, 2025 WL 1903192, at *10 (11th Cir. July 10, 2025) ("[W]hen a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings." (citing Sw. Airlines Co. v. Saxon, 596 U.S. 450, 457–58 (2022))). Thus, Defendant's argument is misplaced.[5]

Further, while not determinative, the Court also notes that Plaintiff's interpretation of "residential subscriber" comports with the overall purpose of the TCPA. As the Eleventh Circuit has observed, the TCPA is designed to protect residential privacy, a government interest articulated in the legislative history of the Act. Osorio v. State Farm Bank, F.S.B., 746 F.3d 1242, 1258 (11th Cir. 2014) (quoting Maryland v. Universal Elections, Inc., 729 F.3d 370, 376–77 (4th Cir. 2013)). Regardless of whether a person receives a call to their home phone or a personal cell phone, the negative impact to their residential privacy remains the same. Defendant's interpretation of the TCPA would yield strange results, protecting the privacy interests of a landline subscriber but not a cell phone subscriber—even when the cell phone is the sole phone for home use, as is

[5] Defendant also contends that, if Congress wanted the TCPA to cover cell phones, it should have amended the statute to do so. Dkt. No. [27]. But, as discussed above, courts have long interpreted the TCPA to cover cell phones, meaning that Congress would have little reason to remedy a gap that, for decades, did not exist.

increasingly the case. In other words, Defendant's interpretation would tie residential privacy interests to an obsolete and disappearing phone technology. Thus, Plaintiff's interpretation of the TCPA aligns with both the plain text and the objectives of the TCPA.

Having decided that a "residential subscriber" is a person who maintains a phone for residential or personal purposes, the Court turns to the question of whether Plaintiff qualifies as such. Here, Plaintiff has alleged that he uses his cell phone solely for "personal and residential purposes," such as communicating with friends and family, and that he does not use his cell phone for a business. Dkt. No. [15] ¶¶ 37–40. Plaintiff also pleads that his cell phone is his primary means of telephonically communicating with others. Id. ¶ 41. Thus, Plaintiff is a "residential subscriber," meaning that he is entitled to the TCPA's protections. The Court therefore rejects Defendant's first argument.[6]

**B. Defendant's Liability**

Next, Defendant argues that Plaintiff has failed to allege a sufficient basis to hold it responsible for the text messages Plaintiff received. Dkt. No. [17-1] at 4–13. Specifically, Defendant contends that Plaintiff has pleaded an insufficient basis to show that either: (a) Defendant sent text messages directly to

[6] Because the Court reaches this decision on the basis of the parties' existing briefings, there is no longer a need for Plaintiff to file a supplemental brief. See Dkt. Nos. [28, 31].

Plaintiff; or (b) Defendant is vicariously liable for sending the messages through its agent. Id. Plaintiff responds that, at this stage of the litigation, his allegations are sufficient to establish either of these alternative theories of liability. Dkt. No. [23] at 8–14.

The Court agrees with Plaintiff. To state a claim for relief under the TCPA, a plaintiff can proceed either on a theory of direct liability or on a theory of vicarious liability, the latter of which is governed by common-law agency principles. Tuso v. Lennar Corp., No. 23-cv-22264, 2024 WL 1239474, at *2 (S.D. Fla. Mar. 22, 2024). With respect to direct liability, only a party who *initiates* calls can be held responsible for violating the TCPA's ban on unwanted calls. Palm Beach Golf Center-Boca, Inc. v. John G. Sarris, D.D.S., 781 F.3d 1245, 1255 (11th Cir. 2015) (citing 47 U.S.C. § 227(b)(1)(B)); see also Hossfeld v. Am. Fin. Sec. Life Ins. Co., 544 F. Supp. 3d 1323, 1331 (S.D. Fla. 2021).

Here, Plaintiff has sufficiently pleaded that Defendant directly sent him the offending text messages. Throughout his Complaint, Plaintiff repeatedly alleges that Defendant sent him specific text messages advertising UHC health insurance plans.[7] Dkt. No. [15] ¶¶ 43–47, 49, 66. Plaintiff also claims that, after sending a

[7] Defendant claims that Plaintiff's allegations are conclusory because they merely parrot the TCPA's requirements. Dkt. No. [17-1] at 5–6. The Court disagrees, because: (a) it is hard to imagine how Plaintiff could have more specifically pleaded the allegation that Defendant sent him a text message; and (b) the other facts in Plaintiff's Complaint—including his correspondence with Defendant

letter to UHC, Defendant responded directly to his letter. Id. ¶¶ 50–65. In doing so, Defendant indicated that it is affiliated with UHC, and that Defendant itself had investigated Plaintiff's complaint about unwanted text messages. Id. These allegations—which the Court must accept as true at this stage of the litigation—are sufficient to support Plaintiff's theory that Defendant sent him the offending text messages.

But even if Plaintiff had not pleaded a sufficient basis for direct liability, Plaintiff has alleged sufficient facts to hold Defendant responsible under a vicarious liability or agency theory. An agency relationship based on actual authority requires: (1) the principal to acknowledge that the agent will act for it; (2) the agent to manifest an acceptance of the undertaking; and (3) control by the principal over the actions of the agent. Person v. Lyft, Inc., 542 F. Supp. 3d 1342, 1351 (N.D. Ga. 2021) (quoting Franza v. Royal Caribbean Cruises, Ltd., 772 F.3d 1225, 1236 (11th Cir. 2014)). Here, Plaintiff has pleaded that Defendant: hired agents to promote UHC's insurance products, established guidelines and scripts for doing so, and directly responded to Plaintiff's correspondence regarding the text messages he received. Dkt. No. [15] ¶¶ 48–65, 99–102, 108–09. At this stage of the litigation, these facts are sufficient to establish that Defendant exercised sufficient control over its agents for Defendant to be held vicariously liable for the

regarding the text messages—support his theory that Defendant sent him those messages.

offending text messages, even if those messages were sent by Defendant's agents. See Kadylak v. Royal Caribbean Cruise, Ltd., 167 F. Supp. 3d 1301, 1310 (S.D. Fla. 2016) ("Generally, the existence of an agency relationship is a question of fact that should be determined by a jury." (citing Franza, 772 F.3d at 1235–36)). Thus, Plaintiff has alleged sufficient facts establishing that Defendant is either directly or vicariously liable for violating the TCPA.

**C. Internal Do-Not-Call Procedures**

Finally, Defendant argues that Count Two of Plaintiff's Complaint should be dismissed because Plaintiff has not sufficiently alleged that Defendant lacked proper procedures for maintaining an internal do-not-call list. Dkt. No. [17-1] at 20–21. Specifically, Defendant contends that, because Plaintiff never alleges that he requested a copy of Defendant's internal do-not-call policy, Plaintiff's claim fails as a matter of law. Id. Plaintiff responds that his allegations are sufficient to support a claim grounded in Defendant's failure to internally maintain adequate do-not-call procedures. Dkt. No. [23] at 23–24.

The Court agrees with Plaintiff. A TCPA claim "alleging a violation of 47 C.F.R. § 64.1200(d)(3) is based on the initiation of the phone call without having implemented the minimum procedures prescribed by the regulation." Lourie v. Papa John's Int'l, Inc., No. 1:23-cv-4320-MHC, 2024 WL 5497082, at *5 (N.D. Ga. June 25, 2024). These procedures include: (1) a written policy; (2) adequate training; (3) recording of do-not-call requests; (4) identification of sellers;

(5) application of do-not-call requests to affiliated entities; and (6) maintenance of do-not-call list records. Id.; see also 47 C.F.R. § 64.1200(d).

Here, Plaintiff has alleged that he corresponded with both UHC and Defendant's legal counsel, requesting that Defendant stop sending him text messages. Dkt. No. [15] ¶¶ 48–65. Plaintiff has also alleged that, in doing so, he complied with the instructions on UHC's website for consumers wishing to be placed on its internal do-not-call list. Id. ¶¶ 52–53. UHC initially told Plaintiff that it added him to its internal do-not-call list. Id. ¶¶ 53–54. Despite this, Defendant continued to send Plaintiff unwanted text messages, including some messages sent after Plaintiff filed this lawsuit. Id. ¶¶ 66, 69. These allegations are sufficient to raise a plausible inference that Defendant lacked proper procedures for maintaining its internal do-not-call list. Further, although Plaintiff does not allege that he requested a copy of Defendant's official do-not-call policy, Defendant has not cited to any binding authority showing that such an allegation is necessary at this stage of the litigation. Thus, Count Two of Plaintiff's Complaint is sufficiently pleaded, and the Court denies Defendant's Motion to Dismiss.

## IV. CONCLUSION

In accordance with the foregoing, Defendant's Motion to Dismiss [17] is **DENIED**. Defendant's Motion for Leave to File Supplemental Brief [29] is **DENIED**.

**IT IS SO ORDERED** this 7th day of August, 2025.

**Leigh Martin May**
**Chief United States District Judge**